UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.

```
----------------------------------)
DONNA M. O'BRIEN,                 )
    On Her Own Behalf,            )
    and As Next Friend            )
    To Her Minor Daughter,        )
        SELENA D. O'BRIEN,        )    04 CV 10490 MLW
                                  )
        and                       )    MAGISTRATE JUDGE _____
                                  )
    As Next Friend to             )
    Her Minor Son,                )    RECEIPT #_____
        CHRISTIAN M. O'BRIEN,     )    AMOUNT $_____
            Plaintiff             )    SUMMONS ISSUED_____
                                  )    LOCAL RULE 4.1_____
    v.                            )    WAIVER FORM_____
                                  )    MCF ISSUED_____
JOHNSON & JOHNSON, ETHICON, INC., )    BY DPTY. CLK._____
SOUTHCOAST HOSPITALS GROUP,       )    DATE    3-11-04
TOBEY HEALTH SYSTEMS, AND         )
OTHER UNKNOWN DISTRIBUTOR(S),     )
            Defendants            )
----------------------------------)
```

**COMPLAINT**

Now comes the Plaintiff, Donna M. O'Brien, on her own behalf, and as next friend to her minor daughter, Selena D. O'Brien, and as next friend to her minor son, Christian M. O'Brien, and hereby asserts her Complaint against the known and unknown Defendants as follows.

1

1971, is a resident of Buzzards Bay

## **PARTIES**

1. The Plaintiff, Donna M. O'Brien, date of birth October 3, 1971, is a resident of Buzzards Bay (Town of Bourne), Barnstable County, Commonwealth of Massachusetts.

2. Selena D. O'Brien, date of birth of September 29, 1996, the minor daughter of the Plaintiff, Donna M. O'Brien, on whose behalf her mother, the Plaintiff, is bringing this action, resides with her mother in Buzzards Bay (Town of Bourne), Barnstable County, Commonwealth of Massachusetts.

3. Christian M. O'Brien, date of birth of March 12, 2001, the minor son of the Plaintiff, Donna M. O'Brien, on whose behalf his mother, the Plaintiff, is bringing this action, resides with his mother in Buzzards Bay (Town of Bourne), Barnstable County, Commonwealth of Massachusetts.

4. The Defendant, Johnson & Johnson, is a corporation with a principal place of business of One Johnson & Johnson Plaza, New Brunswick, New Jersey 08933.

5. The Defendant, Ethicon, Inc., is a subsidiary corporation of Johnson & Johnson, with a principal place of business of Route 22 West, Somerville, New Jersey 08876.

6.  The Defendant, Southcoast Hospitals Group, is a Massachusetts hospital management corporation with a principal place of business of 101 Page Street, New Bedford, Bristol County, Massachusetts 02740.

7.  The Defendant, Tobey Health Systems of Wareham, is a hospital corporation under the management of Southcoast Hospitals Group, with a principal place of business of 43 High Street, Wareham, Plymouth County, Massachusetts 02571.

8.  The Plaintiff alleges, upon information and belief, that there may be other Defendant Distributor(s) who properly should be named parties to this action, though the identities of said Defendant Distributor(s) are presently unknown to the Plaintiff.

9.  The Plaintiff alleges, upon information and belief, that there may be other defendants who properly should be named parties to this action, whose identities will be determined as discovery progresses, said defendants being presently unknown to the Plaintiff.

10. Plaintiff requests leave of this Court to amend her Complaint to assert the true names and/or capacities of such unknown defendants when ascertained.

11. Plaintiff is informed, believes, and thereon alleges that each named Defendant and each of the unknown Defendants is negligently and/or recklessly and/or intentionally responsible in some manner for the occurrences, actions, and inactions herein alleged, and that Plaintiff's damages, as alleged herein, were proximately caused by said occurrences, actions, and inactions.

## JURISDICTION

12. This court has jurisdiction over this matter pursuant to 28 U.S.C. §1332, in that the Plaintiff's damages exceed the sum or value of $75,000, exclusive of interest and costs.

13. This court has jurisdiction over this matter pursuant to 28 U.S.C. §1332, due to the diversity of the parties.

14. This court has jurisdiction over this matter in that all of the occurrences, actions, and inactions occurred within the Commonwealth of Massachusetts.

## STATEMENT OF THE CASE

15. The Plaintiff reaffirms and realleges paragraphs 1 through 14, enumerated above.

16. This is an action for Products Liability; Negligence; Strict Liability; Breach of Express Warranty; Breach of Implied Warranty of Merchantability; Breach of Implied Warranty of Fitness for a Particular Purpose; Res Ipsa

Loquitur; Loss of Consortium; and a Claim for Punitive Damages; with the cause of action and damages arising from a caesarean section performed on the Plaintiff, Donna M. O'Brien, (hereinafter, "Ms. O'Brien"), on March 12, 2001, in which a product manufactured, distributed, marketed or utilized by the Defendants, Panacryl™ sutures, were used during the Plaintiff's surgery.

17. On March 12, 2001, Ms. O'Brien, was admitted to Tobey Hospital in Wareham, Massachusetts, by Ralph Angus, M.D., for a routine, scheduled caesarean section for the birth of her son, Christian M. O'Brien.

18. Ms. O'Brien had experienced a normal pregnancy with no complications, and had had a previous caesarean section five years earlier in 1996 for the birth of her daughter, Selena D. O'Brien, and had had no residual complications from her previous caesarean section.

19. There were no abnormal occurrences or complications reported by Dr. Ralph Angus, the attending obstetrician, during the caesarean section performed on Ms. O'Brien on March 12, 2001.

20. Dr. Angus administered anesthesia to Ms. O'Brien before performing the cesaerean section on March 12, 2001.

21. In accordance with Southcoast Hospital Group and Tobey Hospital practice and procedure, Dr. Angus used Panacryl™ sutures to close the incision in Ms. O'Brien's abdomen after a normal delivery of her baby.

22. Once the anesthesia wore off, Ms. O'Brien immediately experienced excruciating, unbearable, burning pain along the entire suture line, with more severe pain radiating from the right side of the incision.

23. The doctors and nurses attending Ms. O'Brien at Tobey Hospital after her caesarean section told her that a certain amount of pain, especially where the sutures were tied, was a normal after-effect of her surgery.

24. Since Ms. O'Brien had previously experienced a caesarean section, she knew immediately that the pain she was experiencing was not normal.

25. Ms. O'Brien kept insisting to all of the doctors and nurses attending her that something was very wrong, and that the excruciating, burning pain was constant and increasing.

26. Because she was experiencing such severe pain, Dr. Angus increased the frequency of Ms. O'Brien's pain medication for the duration of her hospital stay.

27. Due to the severity of the pain she was experiencing, and the effect of the pain medication, Ms. O'Brien has not been able to properly care for her newborn son, Christian M. O'Brien, either immediately after his birth, or to this day.

28. Ms. O'Brien and her newborn son, Christian M. O'Brien, were deprived of the bonding experience that normally takes place between a newborn and mother, because of the pain from Ms. O'Brien's sutures, and the effect of the medications for her pain.

29. Ms. O'Brien was hospitalized for five days after her caesarean section, and was released from Tobey Hospital although she was still in severe, excruciating pain and under the influence of pain medications.

30. From her discharge from Tobey Hospital on March 17, 2001, through September, 2001, Ms. O'Brien began seeing her physicians weekly because she was still suffering from severe, excruciating and debilitating pain along her suture line.

31. In early September, 2001, Ms. O'Brien developed large painful lumps on the right side of her suture line, which burst and began draining pus. Dr. Angus then referred Ms. O'Brien to Dr. Kruger, a surgeon.

32. On or about September 13, 2001, Dr. Kruger performed surgery on Ms. O'Brien along the suture line, and removed two unabsorbed Panacryl™ sutures that had caused abscesses and inflammation.

33. Ms. O'Brien continued to experience uncontrollable, excruciating pain, and was essentially bedridden throughout the rest of 2001.

34. Ms. O'Brien's family was not able to celebrate her 30th birthday, Thanksgiving, Christmas, or the New Year with her during 2001 because of the continuing pain that kept her bedridden.

35. Ms. O'Brien's fiancé, Kenneth Chase, had to take over the primary care responsibilities for their newborn son, Christian, from the time of his birth on March 12, 2001, through the present date, and also cares for Ms. O'Brien and Selena O'Brien.

36. On March 10, 2002, Dr. Kruger performed a second surgery on Ms. O'Brien to remove more unabsorbed Panacryl™ sutures from abscessed areas along Ms. O'Brien's suture line – almost a year after her cesaerean section.

37. Ms. O'Brien continued to experience severe, excruciating and debilitating pain, and was prescribed several pain medications to cope with the pain.

38. Ms. O'Brien and Mr. Chase had made preparations for a big wedding on June 29, 2002, but had to cancel the church and hall reservations, the caterer, and all other arrangements for their wedding because of Ms. O'Brien's surgeries and continued pain.

39. Ms. O'Brien was accepted as an intern by the Massachusetts Criminal Justice Council at the Plymouth Police Academy in September, 2002; however, she lost time from the internship because of the continued debilitating pain and the recurrence of abscesses requiring surgery. The time lost from the internship, in addition to the chronic pain and the possibility of further surgeries, has severely diminished Ms. O'Brien's earning capacity and employability.

40. In March 2003, Ms. O'Brien began experiencing sharper and more localized pain along her incision, and made an appointment to see George B. Cabe, M.D., of Falmouth.

41. Dr. Cabe recommended that Ms. O'Brien undergo yet a third surgery to remove whatever scar tissue and suture materials remained in her incision.

42. On March 17, 2003 - two years after Ms. O'Brien's caesarean section - Dr. Cabe performed surgery on Ms. O'Brien's incision and found another suture abscess and scar tissue where other Panacryl™ sutures had been located.

43. Since March 12, 2001, and through the present date, Ms. O'Brien still experiences severe pain and requires pain medication.

44. Ms. O'Brien's physicians directly attribute her pain, discomfort, infections and surgeries to the use of Panacryl™ sutures to close the incision from her caesarean section.

45. Since its release in 1998 and its subsequent removal from the market in 2002, over 284 adverse events have been reported to the FDA which cite Panacryl™ sutures as a cause of infection, suture spitting, abscesses, and other adverse reactions, including death.

46. Panacryl™ sutures were voluntarily removed from the market by its manufacturer, the Defendant, Ethicon, Inc., on July 1, 2002.

47. Ethicon, Inc. has a history of product recalls related to the manufacturing of sutures, and is a party to a class-action suit involving a recalled suture product named Vicryl, which is similar in design and manufacture to Panacryl™.

48. Ms. O'Brien has suffered economic loss, mental, emotional and physical trauma, and distress as a direct result of the pain, infections, surgeries and debilitation, and she continues to suffer to this day.

49. Ms. O'Brien's children, Selena D. O'Brien and Christian M. O'Brien, have suffered a severe and irretrievable loss of consortium with their mother, and severe emotional distress as a direct result of her condition, and they continue to suffer to this day.

### COUNT I.
### PRODUCT LIABILITY

50. The Plaintiff reaffirms and realleges Paragraphs 1 through 49 of this Complaint.

51. Plaintiff alleges, on information and belief, that the Defendants named herein, and the unknown Defendants, designed, manufactured, marketed, sold, distributed and/or utilized Panacryl™ sutures and are negligently, recklessly, and/or intentionally responsible in some manner for the

occurrences, actions, and inactions herein alleged and that Plaintiff's damages were proximately caused by said occurrences, actions, and inactions.

52. Additionally, it is alleged on information and belief that, the subject Panacryl™ sutures were deficient in design or manufacture, or contaminated during processing, distribution or utilization, through facilities designed, fabricated and installed by one or more Defendants unknown to the Plaintiff at this time.

53. It is further alleged on information and belief that each of the named Defendants, and each of the unknown Defendants, in the exercise of reasonable care knew, or should have known, of the deficiencies in their carrying out of their responsibilities and obligations to the public and the Plaintiff; and knew, or should have known, of the deficiencies in design or manufacture, or contamination of the subject Panacryl™ sutures prior to use by a physician.

54. It is further alleged that each of the named Defendants, and each of the unknown Defendants, knew, or in the exercise of ordinary care, should have known, that the subject Panacryl™ sutures were potentially defective and/or contaminated, and that they would be used by members of the medical profession without inspection for defects or

contamination, and that said sutures would be used for subcutaneous closing of incisions and wounds even though they were possibly defective and/or contaminated when they left the custody or control of each of the Defendants herein.

55. It is alleged, upon information and belief, that at all times herein mentioned, each of the Defendants herein, both named and unknown, breached express and implied warranties, both oral and written, and failed to adequately warn members of the medical profession, hospitals, the general public, and the Plaintiff herein, who were the ultimate consumers of the subject Panacryl™ sutures, of the latent defects inherent of said sutures, or of the potentially serious adverse effects arising from the use of the said sutures.

56. As a direct and proximate result of said conduct of all of the Defendants, both named and unknown, the Plaintiff, Donna O'Brien, was made sick, sore, disabled and subjected to multiple surgeries to correct the adverse reaction to the Panacryl™ sutures used to close the incision from her caesarean section.

57. The Plaintiff, Donna O'Brien, has suffered, and continues to suffer, severe, excruciating and debilitating pain as a result of said injuries; Ms. O'Brien also has suffered, and continues to suffer, distressing mental and emotional anguish, depression, and general shock and a result of the Defendants' conduct and her resulting injuries. Ms. O'Brien will continue to suffer pain and anguish for a long period of time as a result of said injuries.

58. In particular, as a result of said conduct by each of the Defendants, both named and unknown, Ms. O'Brien was substantially damaged by severe post-operative infections; multiple surgeries; debilitating pain; scarring; loss of consortium with her children; the postponement of her wedding; emotional and physical trauma; and mental anguish and distress as a direct and proximate result of the Panacryl™ sutures employed in closing the incision from her cesaerean section, whereby each of the Defendants, both named and unknown, are liable to the Plaintiff for the damages resulting from the Defendants' actions or inactions.

59. In the treatment of Ms. O'Brien's injuries, which is still ongoing, she has incurred and is still incurring liability for physicians, surgeons, nurses, hospital care, medicine, psychological treatment, and other medical treatment, the true and exact amount thereof being unknown at this time.

60. The Plaintiff prays for leave to amend this Complaint accordingly when the true and exact costs of Ms. O'Brien's treatment is ascertained.

61. As a direct and proximate result of the said negligence, recklessness, carelessness and/or intentional conduct of the Defendants, both named and unknown, the Plaintiff have incurred, and will continue to incur, loss of income and/or wages, a diminishment of earning potential, and other pecuniary losses, the full nature and extent of which are not yet known to the Plaintiff, and leave is requested to amend this Complaint to conform to proof at the time of trial.

62. As a direct and proximate result of the aforementioned actions and inactions of each of the Defendants, both named and unknown, the Plaintiff have suffered injuries, damages, loss, and harm as alleged in this Complaint.

WHEREFORE, the Plaintiff prays judgment against each of the Defendants, as herein alleged.

## COUNT II.
## NEGLIGENCE

63. The Plaintiff reaffirms and realleges Paragraphs 1 through 62 above.

64. The Defendants, both named and unknown, knew, or should have known through the exercise of reasonable care, that the Panacryl™ sutures manufactured by the Defendants were defective, based on the fact that within the first few months of its release on the market, over 85 adverse events directly related to Panacryl™ sutures were reported to the FDA.

65. The Defendants, both named and unknown, had a duty to warn the medical profession and the general public of such adverse events, and the potential for serious adverse effects from use of Panacryl™ sutures.

66. Nevertheless, the Defendants warranted and represented to the FDA, to the medical profession, to the general public, and to the Plaintiff, that the Panacryl™ sutures were safe and harmless.

67. Before Panacryl™ was voluntarily pulled from the market on July 1, 2002, over 284 adverse events listing Panacryl™ as the cause of inflammation, infection, suture spitting, abscesses, and other adverse effects from use of the said sutures, were reported to the FDA.

68. Nevertheless, the Defendants failed to warn the medical profession, hospitals, suppliers or the general public of such potentially serious adverse effects resulting from the use of Panacryl™ sutures.

69. In fact, the Defendants, both named and unknown, did nothing to ensure that physicians, surgeons and patients were informed of the risks of using Panacryl™ sutures.

70. As a direct and proximate result of the aforementioned actions and/or inactions of the Defendants, both named and unknown, the Plaintiff and her children have suffered injuries, damages, loss, and harm as alleged in this Complaint.

WHEREFORE, the Plaintiff prays judgment against each of the Defendants as herein alleged.

### COUNT III.
### STRICT LIABILITY

71. The Plaintiff reaffirms and realleges Paragraphs 1 through 70 of this Complaint.

72. The Defendants, both named and unknown, designed, tested, analyzed, manufactured, compounded, packaged, fabricated, labeled, distributed, advertised, promoted, warranted, recommended, merchandised, prepared and/or sold the subject Panacryl™ sutures, which were intended to be used in medical procedures.

17

73. The subject Panacryl™ sutures were defective and unsafe for their intended use, and for any other foreseeable uses, by reason of defects in their design, fabrication, labeling, testing and sterilization, as described herein, *supra* and *infra*.

74. Each of the Defendants, both named and unknown, knew, or by the application of reasonable developed human skill and foresight, should have known, that the subject Panacryl™ sutures were unsafe and inherently defective as they may have caused, as they in fact did cause, infections and other injury to the Plaintiff.

75. As a proximate result of the above-mentioned defects in the subject Panacryl™ sutures, as alleged herein, the Plaintiff has suffered continuous, debilitating and excruciating pain, chronic infections and abscesses, multiple surgeries, long-term recuperation and incapacitation, loss of consortium, and other injury.

76. The Plaintiff, upon information and belief, alleges that each of the Defendants, both named and unknown, that at all times herein mentioned, knew that the subject Panacryl™ sutures were unsafe and inherently defective, and/or contaminated, and that there was the probability of serious risk to patients if used.

77. In disregard of this knowledge, the Defendants, both named and unknown, decided, in conscious disregard of the safety, health and rights of users and recipients of the subject Panacryl™ sutures, and without giving notice of the defects to users, the medical community, or to the public or the Plaintiff, to place the subject Panacryl™ sutures on the market and represent to the public that said sutures were safe to use.

78. Upon information and belief, the Plaintiff alleges that the Defendants, both named and unknown, knew that the subject Panacryl™ sutures were defective and/or contaminated. The Defendants were thus under a duty to warn the medical professional community, the general public and the Plaintiff of the potential dangers. The Defendants did not warn, or did not properly warn, the medical practitioners or the public or the Plaintiff. Rather, these Defendants distributed known or suspected defective and/or contaminated Panacryl™ sutures.

79. Therefore, based on the foregoing, the Plaintiff and her children are entitled to exemplary and punitive damages in an amount sufficient to punish and make an example of each of the Defendants.